FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 12, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BERTHA STELLA GARCIA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:16-CV-03174-LRS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 18).

## JURISDICTION

Bertha Stella Garcia, Plaintiff, applied for Title II Social Security disability insurance benefits (SSDI) on October 11, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on July 30, 2014, before Administrative Law Judge (ALJ) Virginia M. Robinson. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On April 24, 2015, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has an 11th grade education and past relevant work experience as a cashier, fast food worker, inventory clerk, agricultural produce sorter and quality control technician. She alleges disability since October 17, 2011, on which date she was 32 years old. Her date last insured for SSDI benefits is December 31, 2016.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) rejecting Plaintiff's symptom testimony; and 2) failing to properly consider and weigh medical opinion evidence.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///
///
///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has a "severe" medical impairment, that being lumbar degenerative disc disease;

2) Plaintiff's impairment does not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with some additional limitations. She is able to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; she is able to stand and walk six hours in an eight hour workday and sit for six hours in an eight hour workday, with normal breaks; she can occasionally climb ramps or stairs, but can never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch and crawl; she must avoid exposure to excessive wetness, excessive vibration, and workplace hazards such as dangerous machinery or working at unprotected heights;

4) Plaintiff's RFC allows her to perform her past relevant work as a cashier, fast food worker, and quality control technician;

5) Alternatively, her RFC allows her to perform jobs existing in significant numbers in the national economy as identified by the VE, including furniture rental consultant and storage facility rental clerk.

Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be

rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d).

The ALJ gave "great weight" to the opinions of Disability Determination Services (DDS) consultant Robert Hoskins, M.D., who reviewed the Plaintiff's file in February 2013, and concluded Plaintiff could perform light work with additional restrictions of postural movements and environmental factors. (AR at p. 27). Considering Plaintiff's subjective complaints and "new medical evidence," the ALJ found Plaintiff had more significant limitations of postural movements than those opined by Dr. Hoskins, but concluded that overall, his assessment was consistent with Plaintiff's demonstrated abilities, which include caring for her developmentally delayed son. (*Id*.).

Dr. Hoskins reviewed Plaintiff's file before Plaintiff was examined by Tyler Chisholm, M.D., of Yakima Valley Farm Workers Clinic, Andrew Ko, M.D., at the University of Washington (UW) Medical Center, Catherine Patnode, Advanced

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

Registered Nurse Practitioner (ARNP), and Qilin Lu, M.D.. Therefore, Dr. Hoskins did not consider the subsequent findings and opinions of these medical professionals in rendering his RFC assessment. Tellingly, Dr. Hoskins qualified his opinion regarding Plaintiff's RFC as follows: "not a great deal to go on here; no neurological abnormalities found on ER visit[1]; [m]odified light work accommodates the objective evidence in the file." (AR at p. 97).

It was not until Plaintiff had an MRI in March 2013, one month after Dr. Hoskins' RFC assessment, that a neurological abnormality was discovered. That MRI revealed a "[r]ight herniated nucleus pulposus right paracentrum with rootlet impingement L5-S1" and a "[l]esser subannular disc herniation L4-5" at the left paracentrum with no rootlet impingement. (AR at p. 462). Based on those results, Dr. Chisholm opined Plaintiff was currently unable to work due to pain, but that her chances of recovery were good, pending further evaluation at the University of Washington. (AR at p. 464). Dr. Chisholm indicated this limitation had existed since March 2012, and that a temporary disability classification was appropriate. (AR at p. 464). Dr. Chisholm opined that Plaintiff was unable to sit for long periods of time, to bend at the waist, to walk briskly, or to lift more than 10 pounds. (AR at p. 492).

As a result of a referral by Dr. Chisholm, Plaintiff was seen in May 2013 by Andrew Ko, M.D., at the UW Medical Center. Dr. Ko reviewed the MRI results. While acknowledging the MRI showed a "left L4-L5 paracentral disk herniation

---

[1] Plaintiff was seen at the Yakima Valley Memorial Hospital Emergency Room on December 4, 2011 for back pain. (AR at p. 436). The emergency room doctor noted that Plaintiff did not have medical insurance, but should look into a possible sliding scale to help her afford medical visits. (AR at p. 438). The doctor opined that Plaintiff likely had a nerve problem and should follow up with a regular doctor to have an MRI (Magnetic Resonance Imaging). (*Id.*).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

without nerve root impingement," Dr. Ko apparently overlooked the fact that there was a nerve rootlet impingement at L5-S1. (AR at p. 543). As a result, he concluded that surgery, specifically a diskectomy, would not be "particularly helpful for [Plaintiff]." (*Id.*). According to Dr. Ko: "on imaging her disk does not appear to be impinging on the nerve root and her residual radicular symptoms may be due to irritation and scarring rather than ongoing compression, of which there is none." (*Id.*). Dr. Ko indicated Plaintiff could "participate in full hours (31-40 hours)[,] however should not lift heavy objects." (AR at p. 573). It is noted, however, that Dr. Ko also indicated that he was responding to a question on a form which he was unable to read in full. (*Id.*).

In December 2013, Plaintiff saw Michael Chang, M.D., at Orthopedics Northwest, PLLC. He noted that her pain symptoms were 100% improved one day after a Lumbar Transforaminal Epidural Steroid Injection at L5-SI, suggesting her pain was likely the result of the right-sided L5-S1 disc herniation. Plaintiff advised Dr. Chang she did not wish to consider surgical intervention until the summer of 2014 at the earliest. (AR at p. 483 and p. 488). Dr. Chang recommended a pain management consultation for the time being and indicated he did not need to see the Plaintiff again until she was ready for surgery. (AR at pp. 483-84).

At some point later in 2013, Plaintiff became a patient of ARNP Catherine Patnode and Qilin Lu, M.D.. In December 2013, Patnode opined that Plaintiff's condition was permanent and likely to limit her ability to work, look for work, or train to work, and that she was limited to sedentary work requiring lifting no more than ten pounds and primarily involving sitting, with walking or standing for brief periods. (AR at p. 499). She opined that Plaintiff would miss one to four days of work per month because of back pain. (AR at p. 503). In March 2014, Dr. Lu opined that Plaintiff could not engage in heavy lifting or prolonged standing and the most she could work, look for work, or prepare for work was 1-10 hours per week. (AR at p.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

504). He further opined that Plaintiff was "severely limited" in that she was unable to lift at least two pounds or unable to stand or walk. (AR at p. 506). He indicated that Plaintiff's condition was not permanent, but that she needed back surgery. (*Id.*).

At the time of her administrative hearing in July 2014, Plaintiff had still not undergone back surgery. It appears that as of August 2015, when she had a second MRI, she had still not undergone surgery as that MRI continued to show nerve root impingement at L5-S1. (AR at p. 618).

The ALJ erred in giving "great weight" to the opinion of Dr. Hoskins, a non-examining medical advisor/expert. Dr. Hoskins acknowledged he had a limited medical record before him. He was not aware of any neurological abnormality at the time he rendered his opinions, nor was he aware of the subsequent consensus among the medical professionals (Drs. Chang and Lu) that Plaintiff was in need of surgery to correct that neurological abnormality. Accordingly, Dr. Hoskins' opinion does not constitute substantial evidence of Plaintiff's RFC because it is not supported by other evidence in the record and is not consistent with that other evidence.

The ALJ found that the limitations opined by Dr. Lu and ARNP Patnode were not supported by the objective medical evidence. (AR at p. 28). Substantial evidence does not support this conclusion. Dr. Lu and ARNP Patnode were aware that Plaintiff was suffering from a nerve root impingement in her back, whereas Dr. Hoskins and Dr. Ko were not. This fact undermines the ALJ's conclusion that Plaintiff's symptom testimony was not entirely credible, as discussed *infra*.

**SYMPTOM TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

*v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified she lives with her special needs son. (AR at p. 46). She walks him a block or so to where he catches the school bus and then meets him when the bus drops him off after school. She makes meals for him and assists him with showering and tying his shoes. (AR at p. 47). Plaintiff testified that having back surgery in the summer would be better because her son is not in school at that time and so does not require as much attention. (AR at pp. 47-48). Plaintiff testified she would be starting classes at the community college the next week after the hearing in an effort to obtain her GED. Plaintiff indicated it was through WorkSource[2] that she

---

[2] WorkSource is statewide partnership of state, local and nonprofit agencies that provides employment and training services to job seeker and employers in the State of Washington.
https://www.worksourcewa.com/microsite/Content.aspx?appid=MGSWAINFO&seo=about&pageType=simple

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

was going to school and that her doctor had limited her class time to 11-20 hours a week. (AR at pp. 49-50). Plaintiff acknowledged receiving unemployment benefits through January or February of 2014. She testified that she looked for work while she was collecting unemployment and was open to accepting anything in an effort to support her son. (AR at pp. 50, 56-57 ). She testified that she would have probably stayed at her previous job had she not been terminated, but also testified she did not think she could do that job now because of her herniated discs and pinched nerve, and her inability to lift anything heavy. (AR at p. 52).

Plaintiff testified that she cannot even lift a gallon of milk and that her son helps her out with lifting things. (AR at p. 54). She testified she can stand for about twenty minutes and then needs to sit down for ten minutes to rest. (AR at p. 55). Plaintiff testified she can sit for twenty to thirty minutes before she needs to stand for about ten minutes until her back relaxes and allows her to resume sitting. (AR at p. 58). Plaintiff's testimony regarding her limitations is not inconsistent with the limitations opined by Drs. Chisholm and Lu, and ARNP Patnode.

The ALJ notes that after May 2012, the Plaintiff did not seek treatment again which "suggests that her condition was not severe enough to warrant treatment at that time." (AR at p. 25). Citing Dr. Ko's report, the ALJ wrote that Plaintiff's condition "was not considered surgical at that time," (AR at p. 25), although as noted above, Dr. Ko apparently did not notice there was nerve rootlet impingement at L5-S1 in opining that Plaintiff would not benefit from surgery.

According to the ALJ, the Plaintiff "was referred to physical therapy in June 2013" and "testified she did not return because the doctor moved out of state, but I note that the clinic is still there." (AR at p. 43). What the ALJ specifically asked the Plaintiff is whether she went back to the UW Medical Center and Dr. Ko after completing physical therapy at Central Washington Physical Therapy in June 2013, pursuant to a referral from Dr. Chisholm apparently at the direction of Dr. Ko. (AR

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 11**

at pp. 43; 467-68; 543). Plaintiff said she did not go back because Dr. Ko had moved out of state. (AR at p. 43). There is no indication, however, that Plaintiff was told she needed to return to see Dr. Ko or that she in fact had an appointment with him that she canceled or did not attend. The record shows Plaintiff completed her June 2013 physical therapy without missing any of the scheduled appointments. (AR at pp. 470-72; 604-614). The ALJ noted that Plaintiff failed to show up or call for several physical therapy appointments at Yakima Regional in May/June 2014 (AR at p. 26), but there is no indication in the record that Plaintiff failed to complete the prescribed course of physical therapy. In fact, Plaintiff testified she had just completed that therapy not too long before her administrative hearing. (Tr. at p. 45). The ALJ noted that Plaintiff declined to consider surgery in November 2013 (AR at p. 26), but the Plaintiff has offered a valid reason for this in that she would prefer to convalesce at a time when her developmentally delayed son is in school. (AR at pp. 46-48). At her administrative hearing in the summer of 2014, Plaintiff testified she was making some effort to contact doctors about arranging surgery, but had not heard back from any of them. (AR at p. 48).

The ALJ found that Plaintiff's allegation of disability was undermined by her receipt of unemployment dates after her alleged disability onset date of October 17, 2011. The ALJ noted that after an unemployment administrative hearing held on December 20, 2011, it was found that Plaintiff was ready, willing, and able to work, and her unemployment benefits, which had been terminated in November 2011, were restored. Plaintiff collected benefits until early 2014. (AR at p. 26). At her social security administrative hearing, Plaintiff acknowledged she was looking for work while collecting unemployment and that included working in a gas station which was her last job. (AR at pp. 50-51). In her April 2012 application for unemployment benefits, she indicated there was no reason why she could not seek or accept full-time work. (AR at p. 364).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

At her social security administrative hearing, Plaintiff contended she was wrongfully terminated from her job. (AR at p. 51). As the ALJ noted, Plaintiff did not, in conjunction with her seeking of unemployment benefits, assert that her back problems resulted in her termination. Instead, performance-related reasons, unrelated to her alleged disability, were offered for her termination. (AR at pp. 26-27). Plaintiff's employment benefits were restored because it was determined that her failure to meet performance standards was not the result of deliberate or willful misconduct. (AR at p. 361). It was also determined that Plaintiff was "able and willing, available, and actively seeking work during the weeks at issue . . . ." (*Id*.).

The medical record reveals Plaintiff complaining of back pain radiating down to her right leg as early as February 2009. (AR at p. 539). In July 2011, just a few months prior to her termination from employment, Plaintiff was seen at Yakima Neighborhood Health Services for pain in her legs radiating to her back. (AR at pp. 430-31). As discussed above, just a few months after her termination from employment (December 2011), Plaintiff was seen at a hospital emergency room for back and leg pain. In her decision, the ALJ acknowledged that receipt of unemployment benefits does not preclude receipt of social security disability benefits, although it is one of many factors that must be considered in determining whether a claimant is disabled. (AR at p. 26, citing 20 C.F.R. § 404.1512(b)). Plaintiff did not certify to the employment security agency that there was no medical reason that would preclude her from employment. She simply certified she was ready, willing and able to work at a time (April 2012) when it had not yet been ascertained that she had a nerve impingement and required back surgery. This was not ascertained until March 2013. There is no compelling reason to believe she was not willing to at least attempt certain jobs, even a job similar to the one from which she was terminated, in order to see if she could perform them, notwithstanding her back condition.

The ALJ found that Plaintiff's reported activities "are consistent with the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

conclusion that she is able to work at the light level of exertion," noting that Plaintiff reported she provides 24-hour-per day care for her son and indicated she would be attending GED and computer classes that would not exceed 20 hours per week. (AR at p. 27). The Ninth Circuit has recognized there are differences between activities of daily living and full-time employment. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996). See also *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer"). Because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit had held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick*, 157 F.3d at 725.

        Plaintiff's reported activities are not inconsistent with her claimed limitations. She testified her son assists her with lifting items and with other things at home, and that she has to take breaks when she is engaged in household activities, such as washing dishes. (AR at pp. 54-55). Consistent therewith, in "Disability Reports" filed on her behalf, Plaintiff indicated she needed additional time to complete simple household chores (AR at p. 252), including cooking (AR at p. 244), and to attend to personal needs such as getting dressed (*Id.*). Furthermore, planning to take classes does not indicate Plaintiff can perform activities inconsistent with her claimed limitations and there are indeed accommodations available for part-time schooling that are not available in full-time employment.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

None of the reasons offered by the ALJ for discounting Plaintiff's symptom testimony are "clear and convincing."

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Treichler*, 775 F.3d at 1099, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the]

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

Here, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Drs. Chisholm and Lu, and of ARNP Patnode. She also failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. There are no outstanding issues that must be resolved before a determination of disability can be made. Based on the limitations opined by Drs. Chisholm and Lu, and ARNP Patnode, and the limitations testified to by Plaintiff, which are consistent with those opinions, there is no question that Plaintiff has been disabled for a period of at least twelve months. The VE confirmed as much in responses she gave to hypotheticals posed by the ALJ (AR at pp. 66-68) and by Plaintiff's counsel (AR at pp. 68-70). Dr. Chisholm opined that Plaintiff's disability began in March 2012. Accordingly, the court will deem that the onset date for Plaintiff's disability for the purpose of calculating her Title II benefits.[3]

///

///

---

[3] It is possible the Plaintiff had back surgery since this record closed which perhaps improved her condition and her RFC. That is not, however, an issue for this court's determination based on the present record.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 13) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 18) is **DENIED**. The Commissioner's decision is **REVERSED**. Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an immediate award of disability benefits based on an onset date of March 1, 2012. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___12th___ day of December, 2017.

*s/Lonny R . Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 17**